UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEON WEBB,

                         Petitioner,

    -vs-                                    **DECISION AND ORDER**
                                            **No. 10-CV-0585(MAT)**

SUPERINTENDENT GRIFFIN,

                         Respondent.
_____

## I.   Introduction

Pro se petitioner Leon Webb("Webb" or "Petitioner") has filed
a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254
challenging the constitutionality of his detention in Respondent's
custody. Webb is currently incarcerated as the result of a judgment
of conviction entered against him on August 8, 2007, following a
jury trial in Erie County Court, on two counts of robbery in the
first degree, one count of robbery in the second degree, one count
of attempted robbery in the first degree, one count of attempted
robbery in the second degree, and one count of assault in the
second degree.

## II. Factual Background and Procedural History

At trial, the prosecution presented proof that on June 19,
2006, Petitioner walked into a deli in the City of Buffalo and
pointed a sawed-off, double-barreled shotgun at the clerk,
Almontaser Fadel ("Fadel"). Fadel recognized Petitioner as a

-1-

regular customer but did not know his name. Petitioned demanded money, and Fadel gave him about $200 from the register. Petitioner then ordered Fadel to turn around and stand in the corner. Fadel complied, and Petitioner fled.

On July 29, 2006, Petition, accompanied by Alfred Molina ("Molina") and Chez Boyland ("Boyland") approached Ahmed Musa ("Musa") and Sheriff Dover ("Dover") as they were walking down Herkimer Street in Buffalo. Petitioner pointed a sawed-off, double-barreled shotgun at them and demanded their money. Musa complied. Dover, on the other hand, refused. He backed way and was able to call the police. Petitioner and his cohorts fled the scene.

When police officer Anthony Figueroa responded, he observed Petitioner, Molina, and Boyland running up Herkimer Street. As soon as Petitioner and his friend spotted Officer Figueroa, they ran behind 159 Herkimer, which happened to be where Petitioner's girlfriend lived.

Minutes later, the police apprehended Petitioner, Molina, and Boyland, who were hiding in an abandoned house at 15 Auchinvole, located behind 159 Herkimer. Officer Figueroa found a shotgun that had been discarded in a garbage tote in the front yard of 159 Herkimer.

During a show-up procedure conducted a short time after Petitioner's arrest, he was identified by Musa and Dover. Later

that day, the deli clerk, Fadel, identified Petitioner in a photo array.

While he and Boyland were housed together at the jail following their arrests, Petitioner punched Boyland in the face, breaking his nose. Boyland agreed to cooperate with the prosecution and testified against Petitioner at trial.

Petitioner testified that he merely had been meeting some friends at an abandoned house to smoke some marijuana when he unfortunately got caught up in a nearby robbery incident. Petitioner claimed that he was hiding because he knew he was trespassing and because he had marijuana in his possession. Petitioner testified that he had never possessed a gun and did not like guns, having been shot in the face three times during a robbery and also shot in the knee in a separate incident.

The prosecution introduced several photographs of Petitioner posing with a sawed-off shotgun, identified by one of the responding police officers as the gun he recovered from the garbage tote. The prosecution also introduced letters that Petitioner wrote to his girlfriend from jail in which he discussed the why he committed the robberies and that he had beat up several inmates for saying that he had committed a robbery.

The jury rejected Petitioner's defense and convicted him as charged in the indictment. He was sentenced, as a second felony offender, to a determinate term of imprisonment of twenty years

followed by five years of post-release supervision on count one, a determinate term of imprisonment of fifteen years followed by five years of post-release supervision on counts two through four, and a determinate term of imprisonment of five years followed by five years post-release supervision on counts five and six. Counts two through five were to run concurrently with each other and consecutively to count one. Count six was to run consecutively to all of the other counts.

After his conviction was unanimously affirmed on direct appeal, People v. Webb, Petitioner filed an unsuccessful pro se motion to vacate the judgment in the trial court pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10.

This habeas petition followed in which Petitioner raises the following arguments: his due process rights were violated by the trial court's admission into evidence of photographs and personal letters; the trial court erroneously denied his motion to sever the indictment; Petitioner's unexhausted claim is not a ground for habeas corpus relief since he has failed to cite any authority or facts to support his vague and conclusory allegation; his sentence was harsh and excessive; .

For the reasons that follow, the petition is dismissed.

-4-

## III. Discussion

### A.   Erroneous Evidentiary Rulings

Only violations of federal law are cognizable in a federal habeas corpus proceeding; a violation of state law provides no basis for habeas relief. 28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law. . . . {I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (internal quotations and citations omitted).

A trial court's decision to admit or exclude evidence is rarely a sufficient basis on which to premise a federal due process violation. <u>E.g.</u>, <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990) (noting, on direct review of a criminal conviction, that "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation" and therefore the Supreme Court has "defined the category of [trial] infractions that violate 'fundamental fairness' very narrowly.")Here, there was no error of state law in the trial court's admission of the photographs or the letters.

#### 1.   The Photographs of Petitioner With a Sawed-Off Shotgun

A couple months after the incidents, a number of photographs of Petitioner were recovered at 44 Arnold Street, where Petitioner's girlfriend was then staying. The photographs depicted an individual, purportedly Petitioner, holding a sawed-off shotgun.

Four of the photographs showed Petitioner wearing a white t-shirt and do-rag, posing on a bed with a red bandanna and shotgun shells. The fifth photograph depicted Petitioner in the same attire with the same red bandanna over his face, aiming the sawed-off shotgun at the camera. Petitioner denied possession of the sawed-off shotgun, and thus the prosecution sought to admit the photographs as probative of a material element in the case—Petitioner's knowing possession of the sawed-off shotgun.

The trial court granted the application, and the Appellate Division affirmed the evidentiary ruling on appeal, stating that "[i]nasmuch as defendant's possession of the shotgun was at issue, evidence that defendant possessed that weapon at an earlier time was relevant, and the probative value of the photograph outweighed its prejudicial effect. . . . [T]he People were permitted to introduce the photograph to strengthen their case although they had already established a prima facie case with respect to defendant's possession of a weapon." People v. Webb, 60 A.D.3d at 1292 (citing People v. Alvino, 71 N.Y.2d 233, 245 (N.Y. 1987) (stating that were not required to rest after merely presenting a prima facie case).

Considering the fifth photograph first, it clearly was relevant to establishing Petitioner's knowing possession of the sawed-off shotgun, and the prosecution properly offered authentication testimony from the police officer who recovered the shotgun that it was the same weapon as that depicted in the

photographs. <u>See</u> <u>People v. Brown</u>, 216 A.D.2d 737, 738 (App. Div. 2d Dept. 1995) ("It has long been established that in order to admit a photograph into evidence, authentication is required. Photographs are authenticated by testimony of a person familiar with the object portrayed therein that it is a correct representation of such object . . . .") (citations omitted). Thus, there was no error of state evidentiary law, let alone an error of federal constitutional magnitude.

With regard to the remaining photographs, the Appellate Division concluded that they were properly admitted in evidence because they were also relevant to material issues in the case. In particular, the police recovered a red bandanna with shotgun shells from an individual named "Reggie" near Herkimer Street, where the robberies were committed. Co-perpetrator Molina testified that the red bandanna and shotgun shells were Petitioner's, and that Petitioner had instructed "Reggie" to take them immediately after the robbery.

As the Appellate Division held, "[p]hotographic evidence should be excluded only if its sole purpose is to arouse the emotions of the jury and to prejudice the defendant, which was not the case here." <u>Id.</u> (citations omitted). Where, as here, "the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to due process." <u>Dunnigan v. Keane</u>, 137 F.3d 117, 125 (2d Cir. 1998)

-7-

(quoting <u>Estelle v. McGuire</u>, 502 U .S. at 69).  Accordingly, the Appellate Division's resolution of this issue was neither contrary to, nor an unreasonable application of, clearly established federal law.

### 2.   Petitioner's Letters To His Girlfriend

The prosecution sought permission to introduce certain letters written by Petitioner to his girlfriend while he was being held in jail after July 29, 2006 arrest. In one letter, Petitioner stated, "I got caught up trying to make some money to pay for Shahanna [his child], also to buy you that gold chain. . . . Nobody set me up, if anything I set myself up. When I was being chased I knocked on the door an you were asleep, now I'm in jail but it's not yo [sic] fault." That comment was relevant because co-perpetrator Molina testified that after the robbery, they ran to Petitioner's girlfriend's house at 159 Herkimer and knocked on the door, but no one answered.

In another letter, Petitioner bragged about beating another inmate for accusing him of committing a robbery: "So far I have knocked two mother fuckers out, broke one nigger's note." He elaborated, "The first one I knocked kid [sic] out, slapped him, kneed him and kicked his face over and over for saying I robbed kid [sic]."

The trial court granted the prosecution's application, but, in an effort to reduce any prejudicial effects on the defense, instructed certain portions of the letters to be redacted.

On direct appeal, the Appellate Division held that the letters that he wrote to his girlfriend in which he admitted that he committed the assault and implied that he committed several of the other crimes were properly admitted in evidence under the party admissions exception to the hearsay rule. People v. Webb, 60 A.D.3d at 1291 (citations omitted).

This holding was correct as a matter of state and federal evidentiary law. See People v. Chico, 90 N.Y.2d 585, 588 (N.Y. 1997) ("'[A]dmissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever, or to whomsoever made.'") (quoting Prince, Richardson on Evidence § 8-201 at 510 (Farrell, 11th ed.)); FED. R. EVID. 801(d)(2)(A) ("A statement is not hearsay if—. . . (2) The statement is offered against a party and is (A) the party's own statement . . . ."). "It is well-established under traditional rules of evidence that a party's admission . . . is not hearsay and is therefore not excluded under the hearsay rule." Figueroa v. Mann, 90 Civ.1965, 1992 WL 51542 at *5 (S.D.N.Y. Mar. 10, 1992), aff'd mem., 979 F.2d 845 (2d Cir. 1992); see also, e.g., United States v. Matlock, 415 U.S. 164, 172 ("[T]he [defendant]'s own out-of-court admissions would surmount all objections based on the hearsay rule both at the

suppression hearings and at the trial itself, and would be admissible for whatever inferences the [factfinder] could reasonably draw [from them concerning the material factual dispute] . . . ."); United States v. DeJesus, 806 F.2d 31, 35 (2d Cir. 1986) ("DeJesus; statements were of course admissible as admissions against DeJesus"), cert. denied, 479 U.S. 1090 (1987).

There can be no suggestion that Webb's Sixth Amendment right of confrontation was violated because "the confrontation clause is not implicated where there is no need for the defendant to test the credibility of the individual who made the statements admitted against him. . . . Therefore, when out of court statements introduced against a defendant were made by him, he cannot claim a violation of the confrontation clause." Garcia v. Senkowski, No. 92 Civ. 370, 1992 WL 314895 at *2 (E.D.N.Y. Oct.9, 1992).

Finally, any suggestion that his Fifth Amendment privilege against self-incrimination was violated is without merit. The Fifth Amendment protects only "compelled" testimony; it does not protect the content of voluntarily created documents. United States v. Hubbell, 530 U.S. 27, 36 (2000) ("More relevant to this case is the settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not '"compelled' within the meaning of the privilege."); United States v. Doe, 465 U.S. 605, 610 (1984);

<u>Fisher v. United States</u>, 425 U.S. 391, 409 (1976). Here, Webb voluntarily created each of the letters and sent them to his girlfriend, a private individual not involved in any state action. Therefore, the Fifth Amendment does not protect their content.

### B. Denial of Severance

Petitioner claims that his due process rights were violated when the trial court denied his severance motion. On direct appeal, the Appellate Division held that even assuming, <u>arguendo</u>, that he had preserved for review his contention that the trial court erred in denying his motion to sever certain counts of the indictment, it would conclude that the counts were properly joined under C.P.L. § 200.20(2)(b), and the trial court had no discretion to sever them. <u>People v. Webb</u>, 60 A.D.3d at 1292 (quotation and citations omitted).

C.P.L. § 200.20(2)(b) provides that two offenses are "joinable" when, "[e]ven though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first . . . ." N.Y. CRIM. PROC. LAW § 200.20(2)(b). Here, the June 19, 2006 and July 29, 2006 robberies and attempted robbery were properly joinable under CPL 200.20(2)(b) because evidence regarding the

-11-

individual offenses were material as to the others. In particular, the evidence that Petitioner possessed a double-barreled, sawed-off shotgun was material to all of the offenses. There was a substantial amount of evidence common to the prosecution's cases-in-chief-namely, the photographs showing Petitioner with a double-barreled, sawed-off shotgun and shotgun shells, the recovery of such a shotgun in close proximity to where Petitioner was found hiding, and the DNA analysis linking Petitioner to the shotgun.

There was no error of state law or an error amounting to a denial of due process in the Appellate Division's ruling. Where severance is available under the pertinent state and federal law, decisions to sever "are committed to the broad discretion of the trial court, and will be reversed only upon a showing of substantial prejudice." United States v. Alvarado, 882 F.2d 645, 655 (2d Cir. 1989), cert. denied, 493 U.S. 1071 (1990). Here, however, as a matter of state law, the trial court did not have discretion to sever the counts once they were properly joined under C.P.L. § 200.20(2)(b). People v. Bongarzone, 69 N.Y.2d 892, 895 (N.Y. 1987) (citations omitted).

Morever, "[j]oinder of offenses rises to the level of a constitutional violation only if it actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process." Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993) (collateral review of habeas petition; holding that denial of

severance did not warrant reversal of conviction)(quotation omitted). Although "[t]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively," the Supreme Court has "explicitly accepted that '[t]his type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person . . . in the same trial is a valid governmental interest.'" Herring, 11 F.3d at 377 (quoting Spencer v. Texas, 385 U.S. 554, 562 (1967)).

As the Second Circuit has explained, "[s]ubstantial prejudice does not simply mean a better chance of acquittal." Alvarado, 882 F.2d at 655 (citation omitted). Thus, a petitioner cannot demonstrate the requisite level of prejudice simply by alleging that it would have been more favorable for the defense to have separate trials. Because Webb has not demonstrated "actual prejudice" resulting from the joint trial, he cannot show that his federal due process rights were violated by the consolidation of the offenses in one indictment, which was not improper as a matter of state law.

## C. Denial of Due Process During the Identification Procedures

For the first time in this proceeding, Petitioner claims that the show-up procedure and photo array were unduly suggestive

because "a cap was placed on [his] head by Officer [Mayer], the [Petitioner] was identified in regard [sic] of a cap," and that the "photo array [was] an unacknowledable [sic] sworn signature despite faith [sic]." Although, as Respondent asserts, Petitioner did raise the suggestiveness of both the show-up procedure and the photo-array at the state court level, he now raises different factual grounds in support of his claim.

Arguing that identification procedures are defective for one reason does not preserve the argument that the same procedures are constitutionally defective for a different reason. See, e.g., Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir.) ("Exhaustion requires a petitioner fairly to present the federal claim in state court. A petitioner has fairly presented his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court. The claim presented to the state court, in other words, must be the substantial equivalent of the claim raised in the federal habeas petition.") (quotations and citations omitted), cert. denied, 540 U.S. 1046 (2003); Twitty v. Smith, 614 F.2d 325, 332 (2d Cir. 1979) ("[T]hat effective assistance of counsel was mentioned in the contexts of a Wade hearing and the mistrial motion did not suffice to alert the state court to all of the [ineffective assistance] claims Twitty raises here, and we find that these other claims were not fairly presented

to the state court on the basis of denial of assistance of counsel.").

"[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" federal habeas courts also must deem the claims procedurally defaulted." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001)(citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). Courts will not review the merits of a procedurally defaulted claim unless the petitioner can show (1) cause for the default and actual prejudice resulting therefrom; or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. Aparicio, 269 F.3d at 91.

Petitioner cannot seek leave to appeal this claim in the New York Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. See N.Y. Court Rules § 500.20(a)(2) (providing in relevant part that "only one application is available [for leave to appeal to the Court of Appeals in a criminal case]"). If he were to raise it in a motion to vacate, it would be mandatorily dismissed under C.P.L. § 440.10(2)(c) because the record was sufficient to permit it to have been raised on direct appeal, but Petitioner unjustifiably failed to do so.

The procedural bar that results in the constructive exhaustion of the claim also creates a procedural default. See Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991). Webb cannot avoid such a default because he is unable to show cause for the default and prejudice attributable thereto, or that this Court's refusal to hear the claim would result in a fundamental miscarriage of justice.

Moreover, even if the Court were to consider the claim, the factual allegations are too vague and conclusory to set forth a colarable ground for habeas relief. Furthermore, Petitioner has entirely failed to address the claim in his memorandum of law. Not only is the claim procedurally defaulted, it is also wholly without merit.

**D.   Harsh and Excessive Sentence**

Webb contends for the first time in this proceeding that his sentence was "cruel and unusual" in violation of the Eighth Amendment. The claim is unexhausted since Webb could return to state court to file a motion to set aside the sentence pursuant to C.P.L. § 440.20. Pursuant to AEDPA, a district court may now, in its discretion, deny on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

-16-

This is particularly appropriate where, as here, the unexhausted claim is patently without merit. The Eighth Amendment only forbids the imposition of extreme sentences which are "grossly disproportionate" to the crime of conviction. Lockyer v. Andrade, 538 U.S. 63, 72-73 (2003). In that case, the Supreme Court held that the state court's imposition of two consecutive terms of 25 years to life in prison for the habeas petitioner's "third strike" convictions on two counts of petty theft was not contrary to, and did not involve unreasonable application of, the Supreme Court's clearly established precedent on the Eighth Amendment's gross disproportionality clause. Id. at 73-74.

Thus, under Lockyer, the "gross disproportionality" principle finds sentences disproportionate to their crimes "only in the exceedingly rare and extreme case" and is reserved "for only the extraordinary case." Id. at 73-77. A review of the record does not present an extraordinary case in which the Supreme Court contemplated intervention by a reviewing court into a state's sentencing decisions. Accordingly, Petitioner's claim that his sentence violated the Eighth Amendment is dismissed.

To the extent that petitioner is challenging his sentence as harsh and excessive, as he did on direct appeal, such a claim does not present a cognizable federal question where the sentence imposed is within statutory limits. White v. Keane, 969 F.2d 1381, 1383 (2d Cir.1992) ("No federal constitutional issue is presented

-17-

where, as here, the sentence is within the range prescribed by state law."). Although New York's Appellate Division has discretion to reduce a sentence in the interest of justice, <u>see</u> N.Y. Crim. Proc. L. § 470.15(3), (6)(b), a federal habeas court considering a state-court conviction has no such power, and a claim that a sentence should be reduced in the interest of justice does not allege a violation of a federally protected right. <u>See</u> <u>Fielding v. LeFevre</u>, 548 F.2d 1102, 1109 (2d Cir.1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")).

Here, Webb's sentences clearly were within the pertinent guidelines. Thus, his claim as to the harshness of the sentence presents no claim of a constitutional dimension for this Court to review. <u>Accord</u> <u>White v. Keane</u>, 969 F.2d at 1383.

**E.    Ineffective Assistance of Trial Counsel**

Petitioner's sole allegation in support of ground five is as follows: "Presented conviction as charged in violation of the right to due process ineffective assistance of counsel as the record reveals and or reflects: V." Petition at 5, ¶23. Petitioner

concedes that this "claim" is unexhausted, as he listed it under the paragraph of the form petition requesting information on grounds not previously exhausted in state court.

It is well-established that "[c]onclusory allegations . . . not supported by a statement of specific facts do not warrant habeas relief." James v. Borg, 24 F.3d 20, 26 (9th Cir.), cert. denied, 513 U.S. 935 (1994); see also, e.g., United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994) (holding that the court "is not required to fashion [petitioner's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments").

In the present case, invocation of § 2254(b)(2) is particularly proper here, in light of Petitioner's failure to set forth any comprehensible allegations in support of his contention that he was denied the effective assistance counsel. See Jones v. Hollins, 884 F. Supp. 758, 766 (W.D.N.Y.) ("[W]ithout providing specific citations to the record, . . . [petitioner's] conclusory allegation, made without any factual or case law support, is insufficient to overcome the strong presumption of reasonable assistance [afforded to defense counsel].") aff'd, 89 F.3d 826 (2d Cir. 1995); Matura v. United States, 875 F. Supp. 235, 237-38 (S.D.N.Y.1995) ("[B]ecause [petitioner's] claim is merely a conclusory allegation, petitioner has failed to establish that his counsel's performance was deficient. Petitioner's bald assertion

that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably.").

## IV.  Conclusion

For the reasons stated above, the Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal in forma pauperis.

**SO ORDERED.**

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

DATED:     August 24, 2011
           Rochester, New York